1

2                                              **E-Filed 2/14/11**

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                            SAN JOSE DIVISION

11

12   ADOBE SYSTEMS INC.,                 | Case Number 5:10-cv-03571-JF/HRL

13                    Plaintiff,          | **ORDER[1] DENYING MOTION TO
                                          | DISMISS FOR LACK OF
14        v.                              | PERSONAL JURISDICTION,
                                          | IMPROPER VENUE, AND
15   ADAM CHILDERS, and individual and d/b/a | INSUFFICIENT PROCESS;
     www.softwaremedia.com;              | DENYING MOTION TO
16   SOFTWAREMEDIA.COM, INC.; and DOES 1- | TRANSFER VENUE**
     10, inclusive,
17
                     Defendants.
18

19

20        Plaintiff Adobe Systems Inc. ("Adobe") brought the instant action for copyright and

21   trademark infringement against Defendants Adam Childers and SoftwareMedia.com

22   ("SoftwareMedia") (collectively "Defendants").  Defendants move to dismiss the action for lack

23   of personal jurisdiction, improper venue, and insufficient process, or in the alternative, to have

24   the matter transferred to United States District Court for the District of Utah.  The Court has

25   considered the moving papers and the oral argument presented at the hearing on February 4,

26   2011.  For the reasons discussed below, the motions will be denied.

27

28        [1] This disposition is not designated for publication in the official reports.

## I.  BACKGROUND

Adobe is a Delaware corporation having its principal place of business in San Jose, California.  Complaint ¶ 7.  SoftwareMedia is a Washington corporation with its principal place of business in Salt Lake City, Utah.  Declaration of Adam Childers at ¶ 4.  Childers, the President of SoftwareMedia, resides in Park City, Utah.  *Id.* ¶¶ 2, 4.

SoftwareMedia operates a commercial website through which Internet consumers can purchase computer software.  Declaration of Christopher Johnson ¶ 3; Declaration of Nicole Drey ¶ 3.  The website allows users to place orders, create accounts, and live chat with a sales representative.  Drey Decl. ¶¶ 3, 6.  The "SoftwareMedia Certifications and Credentials" page of the website states that "SoftwareMedia.com is an authorized reseller of thousands of software titles from dozens of manufacturers.  Our close relationship with software manufacturers allows us to provide you with unparalleled information, services and prices."  Drey Decl. Ex. P. The page lists certifications and credentials from, among others, Symantec Corp., Trend Micro, Inc., Autodesk, Inc., Oracle Corp., Vmware, Inc., and McAfee, all of which are located in the Northern District of California.  Drey Decl. ¶ 3, Exs. K & P.  The same page claims that SoftwareMedia is "authorized to sell thousands of titles from dozens of manufacturers" including Adobe.  *Id.*  In addition, SoftwareMedia uses the services of Twitter, Facebook, YouTube, and Google Checkout, and has advertised as a sponsored link on Google.  Drey Decl. ¶ 4, 7 & Ex. L.

Adobe alleges that through SoftwareMedia's website, Defendants sell and distribute unauthorized copies of Adobe Software to consumers.  Complaint ¶ 15.  Adobe also alleges that Defendants use images identical or confusingly similar to Adobe Trademarks.  Complaint ¶ 17.

## II. DISCUSSION

### A.  Service of Process

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirements of service of summons must be satisfied."  *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987).  Under Fed. R. Civ. Pro. 4(a)(1), the summons must "be signed by the clerk" and "bear the court's seal."  In this case, the summons did not bear the seal of the Court or the signature of the clerk.  Instead, the name of the clerk was typewritten on the

2

1  signature line, and the summons was stamped with the name of a deputy clerk.  Drey Decl. Ex.

2  H.

3       The Ninth Circuit has concluded that "Rule 4 is a flexible rule that should be liberally

4  construed to uphold service so long as a party receives sufficient notice of the complaint.

5  Technical defects in a summons do not justify dismissal unless a party is able to demonstrate

6  actual prejudice.  *Chan v. Society Expeditions*, 39 F.3d 1398, 1404 (9th Cir. 1994) (citing *United*

7  *Food & Comm. Workers Union, Local 1977 v. Alpha Beta Co.*, 736 F.2d 1371, 1382 (9th Cir.

8  1984).  In similar contexts, the Ninth Circuit has determined that the lack of a court seal is a

9  technical violation.  *See U.S. v. Smith*, 424 F.3d 992, 1008 (9th Cir. 2005) (holding that lack of a

10  court seal on warrant was a technical violation); *see also Ystrom v. Handel*, 252 Cal. Rptr. 110,

11  114 (Ct. App. 1988) (stating that the lack of a court seal "is a mere technicality and does not

12  render [a summons] 'substantially defective'").

13       Defendants have not shown that the technical defects in the summons prejudiced them in

14  any way.  Accordingly, their request to quash the summons and dismiss the action for failure of

15  process will be denied.

16  **B.  Personal Jurisdiction**

17       When a nonresident defendant raises a challenge to personal jurisdiction, the plaintiff

18  bears the burden of showing that jurisdiction is proper.  *See Decker Coal Co. v. Commonwealth*

19  *Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986).  In the context of a motion to dismiss based upon

20  pleadings and affidavits, the plaintiff may meet this burden by making a *prima facie* showing of

21  personal jurisdiction.  *See Metropolitan Life Ins. v. Neaves*, 912 F.2d 1062, 1064 n. 1 (9th Cir.

22  1990).  Here, Adobe "need only demonstrate facts that if true would support jurisdiction over the

23  defendant," and "conflicts between the facts contained in the parties' affidavits must be resolved

24  in [Adobe's] favor for the purposes of deciding whether a *prima facie* case for personal

25  jurisdiction exists."  *Harris Rutsky*, 328 F.3d at 1129.

26       Because no federal statute governs personal jurisdiction, the Court applies the law of the

27  forum state.  *See Love v. Associated Newspapers*, 611 F.3d 601, 608-09 (9th Cir. 2010).

28  California's long-arm statute is co-extensive with federal standards; thus the Court may exercise

3

personal jurisdiction as long as doing so comports with federal constitutional due process. *Id.* at 609. "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "Personal jurisdiction over each defendant must be analyzed separately." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

### 1. Whether the Court May Exercise Personal Jurisdiction Over SoftwareMedia

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant – general jurisdiction and specific jurisdiction." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). The Court takes up the question of specific jurisdiction first. The Ninth Circuit has articulated a three-prong test for analyzing specific jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quoting *Schwarzenegger*, 374 F.3d at 802).

### a. Purposeful availment

The first prong, sometimes referred to as the "purposeful availment" prong, "may be satisfied by purposeful availment of the privilege of doing business in the forum; by purposeful direction of activities at the forum; or by some combination thereof." *Id.* "Purposeful availment" is treated differently in tort and contract cases. *Id.* Both copyright infringement and trademark claims may be fairly characterized as tortious. *See Quigley v. Guevara IP Oty. Ltd.*, No. C 10-03569 CRB, 2010 U.S. Dist. LEXIS 134409, at *7 (N.D. Cal. Dec. 20, 2010); *Brayton*

1   *Purcell LLP v. Recordon & Recordon*, 361 F. Supp. 2d 1135, 1140 (N.D. Cal. 2005).

2   Accordingly, the Court applies the "effects" test, which "focuses on the forum in which the

3   defendant's actions were felt, whether or not the actions themselves occurred within the forum."

4   *Yahoo!*, 433 F.3d at 1206 (quoting *Schwarzenegger*, 374 F.3d at 803). "The effects test is

5   satisfied if (1) the defendant committed an intentional act; (2) the act was expressly aimed at the

6   forum state; and (3) the act caused harm that the defendant knew was likely to be suffered in the

7   forum state." *Love*, 611 F.3d at 609. In intellectual property cases, the Ninth Circuit has found

8   specific jurisdiction where a plaintiff bringing suit in its home forum against an out-of-state

9   defendant alleges that the defendant engaged in infringing activities knowing that plaintiff was

10  located in the forum. *See Amini Innovation Corp. v. JS Imports Inc.*, 497 F. Supp. 2d 1093, 1106

11  (C.D. Cal. 2007) (collecting cases).

12       **1.  Intentional Acts**

13       Adobe alleges that SoftwareMedia intentionally advertised and sold Adobe-branded

14  products through its website. SoftwareMedia contends that Adobe has not shown that

15  SoftwareMedia intended that any of its action would violate Adobe's copyrights or trademarks.

16  It claims that there is no evidence that Adobe told SoftwareMedia that it was infringing prior to

17  filing the instant action, and that it did not know that the software it sold was unauthorized.

18  However, the Ninth Circuit has construed intent as referring to "an intent to perform an actual,

19  physical  act in the real world, rather than an intent to accomplish a result or consequence of that

20  act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010).

21  Under this construction, SoftwareMedia's advertising, sales, and shipping of Adobe-branded

22  products were intentional acts.

23       **2.  Aimed at the Forum State**

24       Whether activities undertaken through internet websites are aimed expressly at a forum

25  state is assessed under the *Cybersell* framework. *See Quigley v. Guvera IP Pty. Ltd.*, No. C10-

26  03569 CRB, 2010 U.S. Dist. LEXIS 134409, at *16 (Dec. 20, 2010). Under *Cybersell*, mere

27  operation of a passive website is insufficient to establish personal jurisdiction over a defendant,

28  while operation of an interactive, commercial website often is sufficient. *Cybersell, Inc. v.*

*Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).  Adobe alleges that SoftwareMedia's website is highly interactive.  The website allows consumers to purchase products, create user accounts, and interact with SoftwareMedia sales representatives through live chats.  SoftwareMedia has sold and shipped at least one product into California through the site.[2]

Adobe also alleges that SoftwareMedia has engaged in additional intentional activities aimed at California.  For example, SoftwareMedia allegedly It used the services of California companies, including Google, Inc., Facebook, Inc., YouTube, LLC, and Twitter, Inc., to advertise its products to users, and it allows users to make payments through the services of Google Payment Corp., another California company.  Adobe argues that SoftwareMedia's acts place it in direct competition with Adobe by not limiting its sales, activities, or solicitations of new business to consumers located in Utah.  *Cf. Brayton Purcell LLP*, 606 F.3d 1130 (9th Cir. 2010) (finding that defendant targeted the forum by placing itself in competition with the plaintiff and not limiting its prospective new business to its own geographical area).

SoftwareMedia does not dispute these allegations.  The interactivity of the website, together with SoftwareMedia's additional California contacts, is to show that SoftwareMedia's conduct was aimed expressly at this forum.

### 3.  Knowledge of Harm in Forum State

SoftwareMedia claims that it did not know Adobe had an office in the Northern District of California and therefore did not know that its actions would cause harm in this district.  Childers declares on behalf of SoftwareMedia that SoftwareMedia believed that Adobe's principal place of business was Seattle, Washington and had no knowledge that Adobe even had an office in Northern California.  Childers Decl. ¶ 7.  However, Adobe points out that the Adobe-branded product its counsel purchased from SoftwareMedia includes Adobe's San Jose, California, address.  Johnson Decl. ¶ 6, Ex. D.  It asserts that SoftwareMedia at one time was an authorized Adobe reseller and agreed to the terms and conditions contained in Adobe's reseller

---

[2]  The only evidence in the record regarding SoftwareMedia's consumers concerns a sale of software to Adobe's counsel in Woodland Hills, California.  Johnson Decl., ¶¶ 4-5. Ex. C. Adobe indicates that it has intends to conduct additional discovery regarding SoftwareMedia's customers.  Plaintiff's Opposition 7:25-26.

Case No. C 10-3571 JF/HRL
ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, ETC.
(JFLC3)

1   agreement, which provide that any dispute would be litigated in the Northern District of

2   California.  It also argues that because SoftwareMedia advertises its "close relationship with

3   software manufacturers," the majority of which are located in Northern California,

4   SoftwareMedia knew or should have known that its activities targeted this forum.  In light of

5   SoftwareMedia's experience in the software industry, its previous business relationship with

6   Adobe, and the labeling on the Adobe-branded packaging that SoftwareMedia distributed, the

7   Court finds that Adobe has shown that SoftwareMedia engaged in intentional acts, aimed at

8   California, causing harm that it reasonably could have expected would be suffered in this forum.

9   *Cf. IO Group, Inc. v. Pivotal*, No. C 03-5286 MHP, 2004 U.S. Dist. LEXIS 6673, *6 (N.D. Cal.

10  Apr. 19, 2004) (concluding, in a copyright infringement case, that plaintiff "has adequately

11  demonstrated that defendants published images belonging to a California company, affecting an

12  industry primarily centered in California, knowing that harm would be felt in that state").

13          **b.  Relatedness**

14          SoftwareMedia next contends that Adobe has failed to show that the instant action arises

15  out of SoftwareMedia's forum-related activities.  It notes that this Court has held that the

16  purchase of allegedly infringing products by plaintiff's counsel in the forum state cannot provide

17  the basis for establishing personal jurisdiction in a trademark case.  *See Clarus Transphase*

18  *Scientific, Inc. v. Q-Ray, Inc.*, No. C 06-3450, 2006 WL 2374738 at *3 (N.D. Cal. Aug 16, 2006)

19  ("A plaintiff cannot manufacture personal jurisdiction in a trademark case by purchasing the

20  accused product in the forum state.").  However, SoftwareMedia's forum related activities go

21  well beyond a single sale to Adobe's agent.  SoftwareMedia's interactive website advertises the

22  sale of Adobe products as well as its "close relationship" with California firms.  SoftwareMedia

23  also utilizes California firms for its advertizing, for the processing of at least some of its

24  payments, and for other services.  Accordingly, the Court concludes that Adobe's claim arises

25  out of SoftwareMedia's contacts with California.

26          **c.  Reasonableness**

27          Once purposeful direction is established, defendants may defeat jurisdiction only by

28  "present[ing] a compelling case that the presence of some other considerations would render

7

jurisdiction unreasonable." *Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487 (9th Cir. 1993) (quoting *Burger King*, 471 U.S. at 477). In addressing the question of reasonableness, courts consider seven factors: (1) the extent of a defendant's purposeful interjection; (2) the burden on the defendant in defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Burger King*, 471 U.S. at 476-77.

SoftwareMedia bases its argument almost exclusively on the burden it would have in litigating in California. It contends that litigating in the Northern District of California would cause it undue hardship, and that Utah is an efficient and convenient forum for the instant litigation. It describes the disruption and expense having a company representative travel to California allegedly would create, and it argues that litigating in Utah would be little burden to Adobe, a multi-billion dollar company with offices and employees in Utah.

Despite these concerns, SoftwareMedia has consented in its contracts with numerous California companies to litigate all disputes arising from such contracts in this district, and at one time it was a party to such an agreement with Adobe. Drey Decl. ¶¶ 3; Declaration of Chris Stickle ¶ 3. In addition, as Adobe points out there are a number of ways to reduce the expense of litigation, including the admission of counsel *pro hac vice*, the use of the Court's mandatory e-filing procedures, and this Court's practice of allowing telephonic appearances for many matters.[3]

### 2. Whether the Court May Exercise Personal Jurisdiction Over Childers

"Under the fiduciary shield doctrine, a person's mere association with a corporation that causes injury in the forum state is not sufficient in itself to permit that forum to assert personal jurisdiction over the person." *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 520 (9th Cir. 1989). "For jurisdictional purposes, the acts of corporate officers and directors in

---

[3] Because the Court finds that the Court may exercise specific jurisdiction over SoftwareMedia, it need not reach the question of whether it may exercise general jurisdiction.

8

their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals. *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F. Supp.2d 1104, 1111 (C.D. Cal. 1999).   However, "[i]f the corporation is the 'alter ego' of the individual defendants so as to justify disregard of the corporate entity, then a finding of personal jurisdiction over the corporation will support a finding of personal jurisdiction over the individuals." *Id.*; *see also Davis*, 885 F.2d at 520. Alternatively, personal jurisdiction over the individual may be exercised based upon "the individual's control of, and direct participation in the alleged activities" of the corporation. *Wolf Designs, Inc. v. DHR & Co.*, 322 F.Supp.2d 1065 (C.D.Cal.2004); *see also Smith Noble LLC v. South Jersey Vinyl, Inc.*, 47 U.S.P .Q.2d 1944, 1946-47 (1998).

A plaintiff may show that a corporate employee is "the moving, active, conscious force behind the infringing activity" by demonstrating that the corporate officer directs, controls, ratifies, or participates in the infringing activity," *Babbit Electronics v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir.1994), or acts as the "guiding spirit and the active directing hand in full charge of [the corporation's] operations," *International Mfg. Co. v. Landon, Inc.*, 336 F.2d 723, 728 (9th Cir. 1964).  Personal liability for such infringement is appropriate without lifting the corporate veil.  *Babbit Electronics*, 38 F.3d at 1184.

Adobe contends that Childers is subject to personal jurisdiction because he controlled and directly participated in the activities that give rise to jurisdiction over SoftwareMedia.  In his declaration, Childers acknowledges that he is President of SoftwareMedia, participated in transactions for the company, and makes "important decisions regarding [SoftwareMedia's] business.  Childers Decl. ¶¶ 3, 4, 16.  In addition, Childers is listed as "ALL officers" on SoftwareMedia's filing with the Washington Secretary of State, and Adobe's research indicates that the address for SoftareMedia is the same as that of a motorsports store and showroom also owned by Childers.  Drey Decl. Exs. T & V.

Childers nonetheless contends that Adobe has not shown that he was involved in the allegedly infringing activities.  Although he states that he has not personally done business as www.softwaremedia.com, Childers does not dispute that he is the "guiding spirit and active

9

directing hand in full charge of [SoftwareMedia's] activities." Nor does he state that he was not personally involved in establishing the interactive website or marketing and selling the allegedly offending products.

While Childers does claim that he did not believe or know that any Adobe software sold by SoftwareMedia was unauthorized or that any activity engaged in by SoftwareMedia would cause harm to Adobe, such statements are insufficient to avoid personal liability. The issue is whether Childers was the active and conscious force behind SoftwareMedia's sales of infringing products, not whether he was aware that the activity was infringing. Corporate officers are personally liable for the corporation's copyright and trademark infringements when they are a "moving, active conscious force behind the corporation's infringement"; it is immaterial whether such individuals are aware that their acts will result in infringement. *Novel, Inc. v. Unicom Sales, Inc.*, No. C-03-2785 MMC, 2004 U.S. Dist. LEXIS 16861, at **55-56 (N.D. Cal. Aug. 17, 2004).

**C. Venue**

Defendants contend that venue in the Northern District of California is improper and ask the Court either to dismiss the instant action pursuant to 28 U.S.C. § 1406(a), or to transfer it to the District of Utah pursuant to 28 U.S.C. § 1404(a).

**1. Proper Venue**

Plaintiff bears the burden of showing that venue is proper in the chosen district. *Koresko v. Realnetworks, Inc.*, 291 F. Supp. 2d 1157, 1160 (E.D. Cal. 2003); *see also Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). "When there are multiple . . . claims in an action, the plaintiff must establish that venue is proper as to . . . each claim." *Multimin USA, Inc. v. Walco International, Inc.*, 2006 U.S. Dist. LEXIS 33624, 2006 WL 1046964, *2 (E.D. Cal. April 11, 2006).[4]

---

[4]  Adobe notes correctly that "where venue exists for the principal claim of an action, courts have agreed to adjudicate closely related claims even if they lacked an independent source of venue." *Save Our Cumberland Mountains, Inc. v. Clark*, 725 F.2d 1422, 1431 (D.C. Cir. 1984). However, courts have declined to utilize the doctrine of "pendent venue" over trademark claims where venue was proper only for copyright infringement but not trademark infringement

"Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). "The Ninth Circuit interprets this statutory provision to allow venue 'in any judicial district in which the defendant would be amenable to personal jurisdiction if the district were a separate state.'" *Brayon Purcell LLP*, 606 F.3d at 1128 (quoting *Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 289 (9th Cir. 1997)). For the reasons articulated above, both SoftwareMedia and Childers are amenable to personal jurisdiction in this judicial district, and venue for the copyright claim is appropriate.

Venue in a trademark claim is evaluated under the general venue statute, 28 U.S.C. § 1391(b), which provides that an action may be brought in "a judicial district in which a substantial part of the events or omissions give rise to the claim occurred . . . ." In a trademark infringement action, "a substantial part" of the events giving rise to the claims occur in any district where consumers are likely to be confused by the accused goods, "whether that occurs solely in one district or in many." *Cottman Transmission Sys. v. Martino*, 36 F.3d 291, 295 (3d Cir. 1994); *see also Golden Scorio Corp. v. Steel Horse Bar & Grill*, 596 F. Supp. 2d 1282 (D. Ariz. 2009). Plaintiff only need show "that a substantial number of consumers of plaintiff's [trademarked products] who reside in this district may be confused by defendant's use of the [allegedly infringing] mark." *Sutter Home Winery, Inc. v. Madrona Vineyards, L.P.*, No. C 05-0587 MHP, 2005 U.S. Dist. LEXIS 4581, at *4, n.2 (N.D. Cal. March 23, 2005).

Defendants contend that Adobe has not shown that a "substantial part of the errors or omissions" giving rise to the trademark claim occurred in the Northern District of California. They point out that Adobe has not shown that SoftwareMedia has any customers in this district. Indeed, the only record evidence of a sale by SoftwareMedia is of the sale to Adobe's counsel in

---

because the claims "are not so closely related that they justify adoption of a pendent venue theory." *Shari's Berries Intern., Inc. v. Mansonhing*, No. 06-0768, 2006 U.S. Dist. LEXI 96563 (E.D. Cal. Aug 17, 2006); *see also United Truck & Equipment, Inc. v. Curry Supply Co.*, No. cv 08-01046, 2008 U.S. Dist. LEXIS 110213, at *32 n.4 (D. Ariz. Nov. 5, 2008) (noting that the court was "unaware of even one federal case where a court which has an independent basis for federal copyright claims used the 'pendent venue' doctrine to retain federal or state claims that did not have an independent basis for venue").

Woodland Hills, California, which is located in the Central District of California.  However, Adobe asserts that Defendants have offered unauthorized software to other consumers in the Northern District of California through SoftwareMedia's interactive website, have advertised the software through companies in this district, and have allowed consumers to transact purchases through those companies.

In evaluating venue in cases involving internet transactions, courts have found it "useful to compare the law on personal jurisdiction to the law of venue in order to assess the appropriateness of plaintiff's chosen venue." *Dakota Beef*, 445 F. Supp 2d, at 920.  In particular, courts have looked to whether the defendant could be said to have "entered" the district in a way that would create confusion for plaintiff's customers.  *Id.*; *see also Jamba Juice Co.*, 2002 U.S. Dist LEXIS 9459, at *7 (looking to the Ninth Circuit's holding that "in order to establish personal jurisdiction, a plaintiff must show 'something more' than the operation of a general access website, specifically, 'conduct directly targeting the forum'").

Few courts have addressed a situation in which the defendant operates a highly interactive website but there is no evidence of any sales in the district.[5]  In *The Ansel Adams Publishing Rights Trust v. PRS Media Partners*, No. C 10-03740 JSW, 2010 U.S. Dist. LEXIS 126791 at *1 (N.D. Cal. December 1, 2010), the court concluded that venue was proper where the defendants advertised allegedly infringing prints and posters on a website accessible to consumers in the Northern District of California and accepted purchases directly through the site. In *Dakota Beef, LLC v. Pigors*, 445 F. Supp. 2d 917 (N.D. Ill. 2006), however, the court found that venue in a trademark suit against a South Dakota beef producer was not proper despite the presence of an website that could take orders from customers within the district.  In that case the defendant offered affirmative evidence that only two orders were received from the website, no orders were actually fulfilled, and no orders ever were shipped to Illinois.

---

[5]Numerous courts have held that a defendant's operation of a *passive* website containing allegedly infringing material is insufficient to show that venue is proper in a given jurisdiction. *See e.g.*, *Golden Scorpio Corp.*, 596 F. Supp. 2d at 1287 (collecting cases).  However, a website coupled with even a small number of sales in the district can support a finding that venue is proper.  *See e.g. Sutter Home Winery*, 2005 U.S. Dist. LEXIS 4581, *4 n.2.

Case No. C 10-3571 JF/HRL
ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, ETC.
(JFLC3)

Here, Adobe has shown that although there is no record evidence of sales in this district, Defendants have aimed their activities at this district to a sufficient degree that Adobe's customers could be confused.  Unlike the website in *Dakota Beef*, Defendants' website is both active and widely promoted.   Unlike the defendant in *Dakota Beef*, SoftwareMedia has numerous contracts with Northern California software companies, service providers, and advertisers.  The prominent display of Defendants' "close relationship" with these local companies creates an increased likelihood of confusion for consumers in this district.  Accordingly, the Court concludes that a substantial number of Adobe's consumers in the Northern District of California could be confused by Defendants' allegedly infringing activities, and that venue in this district is appropriate.

## 2.  Motion to Transfer

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).  A motion for transfer pursuant to § 1404(a) lies within the discretion of the court.  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000).  Section 1404(a) provides for transfer to a more convenient forum, "not to a forum likely to prove equally convenient or inconvenient," *Van Dusen v. Barrack*, 376 U.S. 612, 646 (1964), and transfer should not be granted if the effect is simply to shift the inconvenience to the plaintiff, *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).  Defendants must show that the balance of conveniences weighs heavily in favor of transfer in order to overcome the strong presumption in favor of plaintiff's choice of forum.  *Id.*

The decision whether to grant such a motion turns on the facts of the particular case.  *Id.*  Factors to be weighed in deciding a motion for transfer include:  (1) the location where the relevant agreements were negotiated and executed; (2) the state that is most familiar with the governing law; (3) the plaintiff's choice of forum; (4) the respective parties' contacts with the forum; (5) the contacts relating to the plaintiff's cause of action in the chosen forum; (6) the differences in the costs of litigation in the two forums; (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses; (8) the ease of access to sources of

13

proof; (9) the presence of a forum selection clause; and (10) the relevant public policy of the forum state, if any. *Jones* at 498-99.

Defendants' motion to transfer focuses largely on the relative convenience of the parties. The argue that traveling to Northern California to defend the instant suit would take a hard toll on SoftwareMedia's operations and Childers's family life, while Adobe would not be burdened significantly by litigating in Utah, where it has an office and 650 employees. They also suggest that Salt Lake City, which has a larger airport than San Jose, would be more convenient for non-party witnesses.

Adobe points to the strong presumption in favor of plaintiff's choice of forum. It claims that transfer to Utah would require it to employ counsel in Utah and cause further delays. It also contends that the vast majority of documents and third-party witnesses are located in California because of Defendants' alleged relationship with California companies.

Neither party makes a particularly compelling argument regarding the relative hardships or conveniences of the two fora. Neither forum appears to be appreciably more convenient for potential witnesses. While Defendants claim that it would be a hardship for them to litigate in this forum, they have entered into numerous contracts consenting to this forum in any related litigation. Similarly, while undoubtedly will be some additional expenses for Defendants as a result of having to litigate in a foreign jurisdiction, such expenses easily can be mitigated through the use of electronic filing, telephonic appearances, and obtaining *pro hac vice* status for their counsel. Defendants have not shown that the balance of the conveniences tips decidedly in their favor.

### III.  ORDER

Accordingly, IT IS HEREBY ORDERED that the motion to dismiss and alternative motion to transfer are DENIED.

IT IS SO ORDERED.

DATED: February 14, 2011

_____
JEREMY FOGEL
United States District Judge

14

Case No. C 10-3571 JF/HRL
ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION, ETC.
(JFLC3)